UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTONIO LEE O'BANNON                                                PLAINTIFF

v.                                    CIVIL ACTION NO. 3:22-CV-P628-JHM

DR. ALLEN *et al.*                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antonio Lee O'Bannon filed the instant *pro se* action under 42 U.S.C. § 1983 against Defendants Dr. Allen and Kerry Pierce. Defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) (DN 21). The Court ordered Plaintiff to file a response to the motion (DN 22), and he failed to do so within the time allotted.[1] The motion being ripe for adjudication, the motion to dismiss will be granted.

**I.**

Plaintiff was a pretrial detainee at the time he filed this action. His claims arise out of his incarceration at the Kentucky Correctional Psychiatric Center (KCPC). In the amended complaint (DN 10),[2] Plaintiff sues Defendant Allen, a doctor at KCPC, and Defendant Pierce, an officer at KCPC, in their individual capacities. He states that he "was sent to KCPC by the courts to be evaluated." He asserts that on September 15, 2022,[3] "Dr. Allen came into my room and started questioning me about my court matters. I told Dr. Allen I did not want to talk. And

---

[1] While Plaintiff did not file a response to the motion, he filed letters addressed to the Clerk of Court and notices attaching documents which he states are evidence in the case. The Court has reviewed Plaintiff's filings and finds nothing that negates the Court's dismissal of the action for the reasons stated herein.

[2] In Plaintiff's original complaint, he sued Defendants in their official capacities only (DN 1). Upon initial review pursuant to 28 U.S.C. § 1915A, the Court dismissed the official-capacity claims and allowed Plaintiff to file an amended complaint suing Defendants in their individual capacities (DN 8).

[3] Plaintiff alleged in the original complaint that the events occurred on September 14, 2022, and alleged in the amended complaint that they occurred on September 15.

that he was violating my rights. And I refused to talk to Dr. Allen." He states that later that day the nurse came to his room and told him that he had to take the medication and he again refused. The nurse then "came back with Officer Kerry Pierce and or five other officers suited up for combat." Plaintiff states as follows:

> Officer Pierce and other officers came into my room and assaulted me and forced me to the bed holding me down assaulting me. The officers put hand cuffs on me. When the officers put me in the hand cuffs, the officers and Officer Pierce cut the back of my pants, and boxers open showing my butt. While I tryed to fight the officers off of me teeling Office Pierce that he was violating my rights. I was then held down on the bed and I felt one of the officers hand go into the crack of my butt cheeks. I told the officers again that they are violating my rights. And then the nurse came and injected medication into the both of my butt checks. Meaning two shots in each butt cheeks. Then Officer Pierce and the other officers put me in some kind of restrain chair and strapped me down taking me to Dorm 3-D inside a single cell. Thats when Officer Kerry Pierce started asking me questions about my case and my court matters. I stayed in the chair until I passed out from the medication.

Plaintiff reports that when he got up the next day Defendant Allen came to his cell and "started asking me about my court matters. And trying to evaluate me." He states, "Dr. Allen told me that if I cooperated that it will all go away, meaning the force treatments and assaults from officers." He reports that the "force treatment medication was []Zyprexa[]." He states, "I have been re-evaluated and taken off the medication. I was also told by Dr. Allen that he was going to do everything he could to make me incompetent so I couldn't get my mother's estate. I refuse to evaluate or answer any questions from Dr. Allen. But he keeps harassing me."

Upon initial review of the amended complaint pursuant 28 U.S.C. § 1915A, the Court allowed Plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment to proceed against Defendant Allen based on Plaintiff's allegations that he was forced to be medicated and a claim for excessive force in violation of the Fourteenth Amendment to proceed against Defendant Pierce.

**II.**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**III.**

*A. Defendant Allen*

Defendants argue that Plaintiff's claim against Defendant Allen for violation of the Due Process Clause must be dismissed. They argue, "Plaintiff was at KCPC under court order to be evaluated for competency to stand trial. There was nothing unlawful about Dr. Allen's repeated attempts to try to evaluate Plaintiff." They continue, "Further, Dr. Allen was authorized by court order, and by his professional medical judgment, to require Plaintiff to take medication (in this

case, Zyprexa, as alleged by Plaintiff), by force, if Plaintiff refused. These allegations, taken as true, do not set forth a cognizable § 1983 claim."

To their motion, Defendants attach an Order entered by the Jefferson Circuit Court in *Commonwealth of Kentucky v. Antonio Lee O'Bannon*, Case No. 21CR0557, on August 17, 2022. The Order stated as follows:

1. Pursuant to KRS 31.110(1)(b), 31.185, KRS Chapter 504 and RCr 8.06, the staff of the Kentucky Correctional Psychiatric Center shall conduct a complete assessment and examination of the Defendant.

2. KCPC shall conduct all mental, psychiatric and psychological examinations and tests necessary to determine the Defendant's mental condition, including whether the Defendant is able to understand the nature of the charge against him and whether he is able to assist his attorney in the preparation of his defense (legally competent to stand trial), whether he was criminally responsible at the time of the offense charged herein, whether he was any mental illness, whether the Defendant has the mental capabilities to understand and waive legal rights, and further, whether the Defendant is in need of further treatment for mental, psychological or emotional problems, and if so, the type of treatment needed.

3. The Defendant's assessment shall be conducted on an inpatient basis.

4. KCPC shall have the right to force the Defendant to take any necessary medications.

The Court may take judicial notice of proceedings in another court. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record.") (quotation omitted). Moreover, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

An inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

4

Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). To restore the competency of "a mentally ill defendant facing serious charges" at trial, "the government may forcibly administer antipsychotic drugs . . . 'only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.'" *Bean v. Matteucci*, 986 F.3d 1128, 1131 (9th Cir. 2021) (quoting *Sell v. United States*, 539 U.S. 166, 179 (2003)).

Upon review of Plaintiff's allegations and taking judicial notice of the Jefferson Circuit Court order described above, the Court concludes that Defendant Allen was acting pursuant to a court order in attempting to evaluate Plaintiff and ordering him to be medicated when he refused to take medication. Plaintiff's claim that he was forced to be medicated in violation of the Due Process Clause cannot be brought against the medical provider who administered the order but must be raised in the Jefferson Circuit Court action where the order was entered. *See Whittington v. Black*, No. CV 23-6164-MWF, 2023 U.S. Dist. LEXIS 209723, at *8-9 (C.D. Cal. Oct. 16, 2023) (dismissing under 28 U.S.C. § 1915A due process claim against medical provider who administered involuntary medication order finding Plaintiff did not allege "Defendants' failure to meet any due-process requirement or the absence of a court order"); *Simmons v. Boudrea*, No. 1:23-cv-52, 2023 U.S. Dist. LEXIS 49140, at *34 (W.D. Mich. Mar. 23, 2023) (dismissing under § 1915A due process claim against medical providers who forcibly medicated inmate); *Stevenson v. Ohio Dep't of Rehab. & Corr.*, No. 3:11 CV 1863, 2012 U.S. Dist. LEXIS 5624, at *10-14 (N.D. Ohio Jan. 18, 2012) (dismissing under 28 U.S.C. § 1915(e) due process claim against medical providers who involuntarily medicated inmate).

Moreover, any claims in this Court challenging the validity of the Jefferson Circuit Court order would be barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction over federal claims that are "inextricably intertwined" with state-court judgments. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Johnson v. Ohio Supreme Court*, 156 F. App'x 779 (6th Cir. 2005). To determine whether the *Rooker-Feldman* doctrine bars a claim, the court must first look to the source of the injury the plaintiff alleges in the federal complaint. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 963 (6th Cir. 2021). If the source of the injury claimed is the state-court judgment, *Rooker-Feldman* applies and the Court lacks jurisdiction. *Id.* When a plaintiff complains about the actions of a third party but where that "third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *Abbott v. Michigan*, 474 F.3d 324, 329 (6th Cir. 2007) (citing *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006)).

In a similar case in the Southern District of Indiana, *Maul v. Cyndie*, a patient at a state hospital sued the medical providers who medicated him against his will pursuant to a state court order. No. 1:18-cv-03295-JPH, 2019 U.S. Dist. LEXIS 105853, at *1-2 (S.D. Ind. June 25, 2019). The court granted the defendants' motion to dismiss finding that the claims were barred by the *Rooker-Feldman* doctrine. *Id.* at *8. In doing to, the court found as follows:

> [I]n attacking the merits of a state-court order, not the procedure followed in arriving at that order, Mr. Maul runs afoul of the *Rooker-Feldman* doctrine. Mr. Maul's claim that he is not a threat to others or himself is inextricably intertwined with the state-court order finding that he is such a threat. The Court cannot rule on one without considering the other. And the Court cannot decide whether Defendants violated Mr. Maul's rights without first considering whether he should be required to take prescribed medications in the first place—an issue already decided by the state court. Indeed, but for that state-court order,

6

> Defendants would not have medicated Mr. Maul. Therefore, regardless of how the claim was articulated in the complaint, Mr. Maul asks the Court to review the substance of a state-court order.

*Id.* at *7-8.

Here, the Court could not make a determination on Plaintiff's due process claim without reviewing why the Jefferson Circuit Court entered its order directing his placement in KCPC for evaluation and ordering medical treatment if necessary. Plaintiff's claim in this case is in fact a challenge to the Jefferson Circuit Court order. This Court lacks jurisdiction to consider the merits of the Jefferson Circuit Court order under the *Rooker-Feldman* doctrine. *See Allen v. Sidaros*, No. 3:20-cv-1276 (JAM), 2022 U.S. Dist. LEXIS 27687, at *9-10 (D. Conn. Feb. 16, 2022) (dismissing "claims against the defendant doctors on their enforcement of the state court orders of involuntary commitment and medication" as barred by *Rooker-Feldman*); *Brown v. Lakes Crossing Ctr.*, No.: 2:20-cv-01363-GMN, 2020 U.S. Dist. LEXIS 238451, at *4-6 (D. Nev. Dec. 18, 2020) (dismissing Fourteenth Amendment claim based on forced medication as barred by *Rooker-Feldman*). Therefore, the Court will grant the motion to dismiss the claims against Defendant Allen.

### *B. Defendant Pierce*

Defendants also argue that Plaintiff's claim against Defendant Pierce for excessive force must be dismissed. They maintain that Plaintiff's only specific allegations of actions by Defendant Pierce are that he "cut the back of my pants, and boxers open showing my butt" and thereafter placed him in a restraint chair. They state that while Plaintiff alleges that he "felt one of the officers hand go into the crack of my butt cheeks," he "does not allege that action was performed by Officer Pierce or that it was done intentionally or with malice." Defendants argue that Plaintiff "claims he was assaulted but does not specify in what manner Officer Pierce

allegedly assaulted him, other than to cut his pants for the swift administration of medication." They further assert that Plaintiff has failed to plead a § 1983 claim for excessive force but, at best, alleges a common-law tort claim, which is insufficient to invoke the Court's jurisdiction.

Excessive force claims brought by a pretrial detainee, such as Plaintiff at the time of the alleged events, are analyzed under the Fourteenth Amendment. *See, e.g.*, *Coley v. Lucas Cnty.*, 799 F.3d 530 (6th Cir. 2015). Under the Fourteenth Amendment, the relevant inquiry for an excessive force claim is whether the "'force purposely or knowingly used against [a prisoner] was objectively unreasonable.'" *Id.* at 538 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). In making this determination, the Court should consider various factors such as "'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Id.* (quoting *Kingsley*, 576 U.S. at 397)

Plaintiff states in the amended complaint that Defendant Pierce came to his cell after he refused to take medication and that Defendant Pierce and other officers "assaulted me and forced me to the bed holding me down assaulting me"; that "[t]he officers put hand cuffs on me"; that "the officers and Officer Pierce cut the back of my pants, and boxers open showing my butt"; and that Officer Pierce and other officers placed him in a restraint chair. Plaintiff also states that he "tried to fight officers off of me."

The Court has taken judicial notice of the Jefferson Circuit Court order described above and has concluded that Plaintiff was medicated in accordance with the order. Plaintiff's allegations that he was "assaulted" are merely legal conclusions, which the Court is not required to accept. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a

8

formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555, 557)). Construing Plaintiff's factual allegations in the amended complaint as true, including that Plaintiff refused his medication and was admittedly trying to "fight the officers off" of him, the Court finds that Plaintiff has failed to state allegations that Defendant Pierce's actions were objectively unreasonable to give rise to a Fourteenth Amendment excessive force claim. Therefore, the Court will grant motion to dismiss the claims against Defendant Pierce.

## IV.

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Defendants' motion to dismiss for failure to state a claim (DN 21) is **GRANTED**. The Court will enter a separate Order dismissing the case.

Date:   February 9, 2024

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
        Counsel of record
4414.010